The next case this morning is number 518-0571, People v. Wagner. Arguing for the appellant David Wagner is Rachel Kinstran. Arguing for the appellee, People of the State of Illinois, is Pat Daly. Each side will have up to ten minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk of the court is permitted to record these proceedings. Good morning, counsel. I apologize. We've had some technical difficulties and some arguments that lasted a little longer than we expected, so I appreciate your patience with us. Are you all ready to proceed? Yes, your honor. Then go right ahead, Ms. Kirkstrand. Thank you. Good morning. May it please the court and counsel. In this case, the jury trial boiled down to a determination of the credibility of the only two witnesses to the incident, RW and my client, David Wagner. There was no physical evidence or other witnesses to the alleged assault, but the state was permitted, without objection, to elicit damning evidence of Wagner's drug use and prison sentence from its own witnesses and during cross-examination of Wagner. As summarized on page 5 of the reply brief, this evidence included that Wagner used a quarter gram of Methadate and THC, that he used meth for six months to a year, that he was in prison when RW made the allegation, and that after his release he stayed in a halfway house. The prosecutor was also permitted to ask Wagner if he was just sitting around the house using meth and cannabis, and if he used in front of his children. This evidence was not admissible as part of the trial court's ruling on the defense's Montgomery motion, as it was well beyond the scope of allowable evidence of Wagner's prior conviction. On appeal, the state now contends that evidence of Wagner's drug use was admissible for any other relevant fact other than propensity. The state's claim amounts to a new theory raised for the first time on appeal, and this court should reject it. But to the extent that the state ever mentioned this evidence as other acts evidence at trial, it was for the purpose of establishing Wagner's motive, state of mind, or a timeline of the events. But the drug evidence really had no bearing on Wagner's state of mind. Drugs were never mentioned by RW and were not part of Wagner's written statement. Further, despite the state's relevance to his ability to recall, that was not alleged as a basis at trial, and it's actually not supported by Chief White or Jesse Gray or even Wagner. As Chief White testified, he offered up the drug use, but didn't actually deny the allegations. And so really when you look at the sites, I think the state cited page 120 of the transcript. The reason he The state also cites no authority for the proposition that his drug use was somehow inextricably intertwined with his statement and therefore admissible. The police never viewed it as an integral part of the allegation, as it was never included in his written statement. Nor is the fact of his prison sentence necessary to establish a timeline. Identity was not an issue in this case, and the police were not prevented from interviewing Wagner in prison. Although the trial court was never asked to make a ruling on the admissibility of Wagner's drug use or prison sentence for an other acts purpose, because no motion of limine was ever made, to the extent it did make any ruling on the drug evidence, it was to reject the state's proposed jury instruction that Wagner's drug use was relevant to his motive and design. In so ruling, the court basically indicated that such evidence was only relevant to show that it might be more likely that he committed the offense. In other words, for propensity, which is not a proper basis for the admission of the evidence. In the final analysis, the jury was permitted to consider the extensive evidence of Wagner's drug use for his believability or any other purpose. The only limiting instruction the jury was given was how to consider the evidence of Wagner's prior conviction for the believability of his testimony. But the evidence of his drug use and the details of his sentence were beyond the scope of what was allowable under Montgomery. And in fact, the prosecutor argued his drug use specifically that he used a quarter gram of methadate in closing argument on the credibility issue before the jury. The trial court engaged in no proper analysis of the admissibility of the evidence or its prejudicial effect. And defense counsel did nothing to prevent the admission of this evidence. In a case that boiled down to a credibility determination, the repeated elicitation of improper drug evidence, including whether used in front of his kids, denied Wagner his right to a fair trial. And for these reasons, and for those set forth in the briefs, Wagner asked this court to reverse his conviction and remand for a new trial. Counsel, you agree this is a plain error review, correct? Yeah, I, you know, I made a number of arguments on it. I think I cited the case of Smith in the briefs and made, you know, this isn't a case where just this evidence came in once. It came in through multiple witnesses and egregiously through the cross examination. So I had argued that there was so much of it that it was a denial of due process of his right to a fair trial, which I think is really a standalone claim. But yes, I argued plain error under both prongs. And really, you know, plain error under closely balanced isn't a sufficiency issue. It's really, if it boils down to two witnesses and the offer plausible version of events, does the error in admitting the evidence tip the scales against the defendant? And I think, you know, I think the volume in this case, you know, this, the amount of drugs that he used, the, you know, the different types of drugs, the stuff about his kids, it really wasn't tethered to an admissible purpose in this case. And then the second issue is the second prong plain error. And it's just, you know, I cited cases for the proposition that if, if you don't properly instruct the jury on how to use it, it's second prong plain error. And here, they were permitted to use all of this evidence for really for any purpose. But the only thing that would really make sense is because they were only given the instruction on how to use a prior conviction. And then of course, I also argued ineffective assistance of counsel. I mean, I can't see a strategic purpose for allowing your client to testify, you know, allowing the prosecutor without objection to ask your client about his daily drug use habits and whether he's using in front of his Thank you, counsel. Obviously, you'd be given time for rebuttal. Mr. Daly, you prepared to proceed. You're on. You're muted. I'm muted on the screen, but we are not hearing you. Yeah. Can you hear me now? Yes. Okay. I have to lose my drive through window microphone here. Okay. Good morning, your honor. Sorry about that. For the record, my name is Patrick Daly. I'm here on behalf of the people of the state of Illinois. I do want to start with one thing that counsel mentioned early in the argument that the state is arguing a new theory on appeal. I have two kind of responses to that. Number one is aptly, we're allowed to draw upon anything in the record, which is, you know, in support of the judgment below. So I don't think that the state is here as aptly is bound by that particular rule, which appears to be kind of a waiver rule that or forfeiture or the defendant's counsel is indicating. Second of all, I think if the court will read the record, we'll note that at the time that counsel had asked the court to exclude evidence of defendant's prior methamphetamine conviction, which came in the nature of essentially impeachment of that with that prior conviction, like a Montgomery test, the state had articulated at the time that it saw evidence relating to both the incarceration and the drug usage as being part of the evidence that it was anticipating that was going to be in the case. So I think that you can from that glean that there was a statement by the state below that it was going to introduce this evidence and that was going to be introduced as part of its sort of proof of the case. And what we're arguing here is that that relevancy and that that applicability of this case falls more generally under the ambit of other crimes evidence rather than say Montgomery impeachment. The state never did actually introduce the prior conviction for methamphetamine at trial. You could probably break this case down into two parts, the drug usage and the incarceration evidence. It's our position, obviously, well, let's let me start here because I think Justice Capes asked a question at the end with regards to the plain error doctrine. And I do want to start with that perhaps. Counsel has indicated, I think accurately that there's two parts to the defendant's position that plain error occurred or ineffective assistance to counsel, which sort of has to be the argument because part of which that defendant is challenging was introduced by defendant's attorney as part of defense counsel's examination of the defendant. As far as the plain error rule is concerned, it's our position in this case that no error occurred, so plain error would not be applicable. But if plain error were applicable in this instance, number one, the evidence is not closely balanced. Although defendant characterizes this as essentially a credibility challenge between two parties, it's really not. What we have here is the statements made by the defendant that defendant actually acknowledged making to the police, but now at trial saying that he only said them because he just wanted to quote get out of the room. Two, we have the testimony of the victim in this case who provided clear and consistent testimony that was in factual accord with the statement that the defendant gave to the police. Three, defendants claimed that his statements were essentially coerced or were essentially fed to him, was refuted by a DCFS investigator who was present at the time of the interrogation and testified in rebuttal. So it's our position that this is not an instance of closely balanced evidence. In fact, the evidence was not closely balanced but weighed strongly in the state's favor in this regard. Defendant's second prong I would tie into perhaps the ineffective assistance of counsel claim. And let's start with that and let's go with the defendant's examination, defense counsel's examination of defendant. In this case, the defendant is challenging as not having happened at all the sexual abuse that was alleged to have occurred by the defendant against the victim, R.W. He testified that the victim actually had continued to maintain contact with him even after the defendant had gone to prison. So defense counsel introduced this and I think this sort of informs some of what defendants claims of ineffective assistance of reviewing a claim of ineffective assistance to counsel is to consider whether in deference to trial counsel's strategic purposes, whether there is a strategic value to this. Defendant says that there is not. However, in this case where it's alleged that the defendant committed these pattern of sexual abuse against the victim, the fact that the victim continued to have contact with the defendant while in prison can be employed effectively if perhaps not successfully to establish that the victim's credibility was simply not there. Why would a victim who had made these claims of a serious acts of sexual abuse continue after the fact to maintain contact with the defendant? From that, we can move to the victim's testimony and the victim did provide testimony which indicated that the defendant had gone to prison. Bear in mind now that if we find that the defendant's testimony was properly introduced, that greatly minimizes the prejudicial impact of this particular type of testimony from the victim because the jury is going to hear this anyway, right? But what we have here is the victim was asked, you know, how long, when did this sexual abuse take place? She indicated that occurred for a period of time, I believe from the 5th to 8th grade until the time that the defendant went to jail, I believe was her testimony. So, it was relevant in that regard not to establish propensity but to establish a timeline for that where the claims of sexual abuse took place. Yes, Your Honor. You know, why wouldn't 5th to 8th grade have been enough? I mean, really all this talk about prison, I am having a hard time with that issue. So, if you assume that error occurred, my concern is the second prong of the plain error doctrine. Okay, Your Honor. Well, I think, obviously, I'm sorry. He talked about going to prison but there was no motion made. So, he didn't know that he shouldn't talk about prison. Well, I keep interrupting. Go ahead. I apologize. To address that last point though, Judge, I mean, our position again is that this was the motion being made. The state's not going to make a motion to prevent it, obviously. Defense counsel didn't have to introduce that. Obviously, it was made as part of either a strategic decision or it may very well be the case that defendant himself wanted to testify to that. All right. I mean, we don't have to speculate necessarily because we can't ascribe to that a particular strategic value. And I think that if that's true, then that really kind of cuts deeply into second prong plain error with regards to what you're pointing to as well, Justice Cates, with regards to other evidence with regards to incarceration. To get to the point of the question regarding the victim's testimony, again, we start with the premise that is this evidence being introduced to establish, you know, some sort of criminal propensity. All right. We could say, number one, to that, no. So, then we move to the question of whether or not that evidence is so unduly prejudicial that it outweighs its probative value. The probative value here is this, that we have a period of time which is sexual abuse begins, it ends, it stops for a reason. Is it true that they could have just stopped and said one from fifth to eighth grade? Yes, but it does provide value in terms of establishing why it suddenly stopped. And in a sense, it actually helps the defendant's case because then the defendant, when they want to pursue the strategic strategy, excuse the length or the continuance of this communication. So, what we have here is we've got a victim who testified from said that was being abused from fifth to eighth grade. And now, after all that time period, the victim continues to have communication with the defendant even after he's in prison. I think when you look at that in its totality, when you're asking, the court asks itself, did plain error occur? Did second-prong plain error occur, structural error? The answer has to be no, because it cannot be the case, given all of that, that this jury was somehow tipped towards the decision to convict this defendant where otherwise that would not have been the case, had that evidence not been introduced. This was the type of evidence, when viewed in its totality, particularly given the defendant's testimony, that the jury was not from the victim in this case. Now, one thing I will at least allow, Your Honor, in continuing that vein, is I do think Chief White's testimony could have been curtailed to probably eliminate the imprisonment aspect of it. But again, I don't believe that if this court does find that testimony was an error with regards to his reference to trying to meet the defendant to interview him, those references that are contained therein with regards to the balance that second-prong plain error would be applicable in this particular instance. Your Honors, I didn't get to the incarceration, excuse me, the methamphetamine usage aspect of it, and I would rest on my brief with regards to those arguments, as well, as I'm out of time. Well, thank you, Counsel. Justice Cage, Justice Barber, do you have any questions? No. Thank you, Your Honor. Thank you. Ms. Kirkstrand, do you have rebuttal? Yes, I do. And just briefly, with respect to counsel's decision to elicit this testimony, when you look at what defense was actually arguing in the closing argument, it really didn't have anything to do with the fact that R.W. continued to communicate with him while he was in prison. If you look at the trial transcripts in the case, it was the mother that, I think, initially made the call to the two deputies, and then I'm inferring that it called the Illinois sexual assault hotline. And what he argued in closing argument was, number one, that there was some inconsistencies with R.W.'s description of the alleged assault, and then number two, that the mother had somehow some sort of motive to end things with Wagner and wanted to do so in a dramatic fashion, the implication being that she was encouraging R.W. to make up the allegations. So, you know, to the extent that the state is arguing that the prison somehow helped Wagner's case, I don't think that that's worn out by what defense counsel used it for. And certainly, you know, the stuff about him being in a halfway house, I mean, that really had with, that had nothing to do with her talking to him. I mean, and also, I think what's curious about the case is that in going to the counsel's arguments on the closely balanced prong, you know, the state wasn't in a hurry to charge him. She made the allegation in May, and then she was interviewed again in September. And then, you know, they were clearly trying to elicit some sort of corroborating statement from defense counsel. So I don't know that his prison term really played any kind of role in it at all. And, you know, going back to the point about second prong plane error, you know, this jury wasn't told how to use any of this evidence. And it was the state that proffered the jury instruction on prior convictions. So, you know, the juries can infer that they can use all of the information about his quantity of methamphetamine usage, and duration, and frequency, and all of the stuff about where he had been living for the past, you know, two years, including IDOC in a halfway house, for his believability. And we believe that's error. And for the reasons we further set forth, we again ask the court to reverse. Thank you, counsel. Justice, do you have any questions? I don't. None. Well, thank you. This matter will be taken under advisement, and we will issue an order in due course. Thank you, counsel. Have a great day.